UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TINA DOMBROFF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:17-CV-39-TLS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| ACTING COMMISSIONER OF THE | ) |
| SOCIAL SECURITY | ) |
| ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Tina Dombroff seeks review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for disability insurance benefits and for supplemental security income. The Plaintiff argues that the Commissioner wrongfully denied her disability benefits and supplemental security income and erred by failing to build an accurate and logical bridge in relation to the Plaintiff's urinary frequency and by failing to incorporate limitations from all of the Plaintiff's medically determinable impairments, both severe and non-severe, into her residual functional capacity.

**BACKGROUND**

On December 4, 2013, the Plaintiff filed her Title II application for a period of disability and disability insurance benefits. (R. 16.) She also filed a Title XVI application for supplemental security income on December 12, 2013. (*Id.*) In both applications, she alleged disability beginning on August 15, 2003. (*Id.*) Her claims were denied initially on February 6, 2014, and upon reconsideration on July 3, 2014. (*Id.*) On September 10, 2015, the Plaintiff appeared with

counsel and testified at a hearing before an administrative law judge (ALJ). (*Id.*) Sharon D. Ringenberg, a vocational expert, also appeared and testified at the hearing. (*Id.*) On October 8, 2015, the ALJ denied the Plaintiff's application, finding she was not disabled. (R. 16–27.) On December 2, 2016, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–3.)

On January 31, 2017, the Plaintiff filed this claim [ECF No. 1] in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has not engaged in SGA since her alleged onset date, August 15, 2003. (R. 17.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including chronic heart failure, diabetes mellitus,

obesity, hypertension, hyperlipidemia, sleep apnea, anxiety disorder, and affective disorder. (*Id.*) The ALJ also found that the Plaintiff had other, non-severe impairments, including urinary frequency, social phobia, and obsessive-compulsive disorder. (R. 19.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" ("RFC")—the types of things she can still do, despite her limitations—to determine whether she can perform "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that she had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except:

> [S]he can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds; her work station must be indoors; and she must avoid concentrated exposure to extreme cold, heat, and humidity, she must avoid moderate exposure to inordinate amount of respiratory irritants, and she must work in an environment with levels of respiratory irritants similar to those found in business offices, retail establishments, public areas such as a post office or library, or a clean industrial setting. She can understand, remember, and carry out rote, or routine instructions or tasks that require the exercise of little independent judgment or decision-making and can be learned from a short demonstration up to 30 days; she cannot make judgments or decisions for more complex detailed types of tasks, such as analyzing compiled dated [sic], directing or planning others' activities, supervising employees, or performing tasks that vary from day to day and require new learning on an unpredictable basis; and she must work in a stable setting where there is little change in terms of tools used,

the processes employed, or the setting itself, and change, where necessary is introduced gradually. She should not work in an environment that is stringently production or quota, base [sic], and thus may not perform fast-paced assembly line work; she can meet production requirements that allow her to sustain a flexible and goal-oriented pace. She can have only occasional and superficial contact with the general public and would not be able to perform a job that entails work-related interaction and conversations with the general public; this occasional contact and interaction could not involve prolonged conversations about work details, but could involve casual and brief conversations; and she could interact and converse with supervisors long enough to receive work instructions, however she could only perform a job that otherwise involves occasional and superficial interaction with her supervisors; and she cannot travel in order to complete work tasks.

(R. 21–22.)

After evaluating the objective medical evidence and the Plaintiff's subjective symptoms, the ALJ concluded that the Plaintiff was not disabled from her alleged onset date. The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (R. 23.) But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." (*Id.*) The Plaintiff testified regarding her level of pain and the functional restrictions on her daily activities. Among other restrictions, the Plaintiff testified that "she did very little beyond taking naps; watching television; and doing laundry, vacuuming, and shopping once a week," that she could prepare simple meals, that "she forgets to take her medications because all she does is sleep," that "[s]he will not travel alone because she is afraid she will have a heart attack," and that she "could walk only ½ block without having chest pain and shortness of breath." (R. 22.) Testimony from the Plaintiff's son corroborated these limitations. (R. 23.) However, the ALJ found that the Plaintiff's treatment records showed that she "was doing well and had an active lifestyle." (*Id.*) In early 2014, the Plaintiff "reported that she cleaned continuously, she shopped until she had anxiety, and she cooked for herself." (*Id.*) She also "did dishes and laundry as needed; she shopped for an hour, weekly; and she drove a car." (*Id.*) The

ALJ also noted that the Plaintiff "testified that she had never taken care of her mother and did not take care of her grandchildren" but that "the record noted in 2013 that she was stressed out because she was the 'main caregiver' of her mother." (R. 23–24.)

The Plaintiff had past relevant work as a crimper, which is unskilled work. (R. 27.) Based on hypotheticals posed to the vocational expert, the ALJ concluded that the Plaintiff was capable of performing past relevant work. (*Id.*) Therefore, the ALJ made no determination regarding whether, considering the Plaintiff's age, education, work experience, and residual functional capacity, the Plaintiff is capable of making a successful adjustment to other work that existed in significant numbers in the national economy. Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act since her alleged onset date. (*Id.*)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 608. The Court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff argues that the ALJ erred by failing to consider the combined effects of all of her impairments, including her non-severe impairments, in determining her RFC and by failing to create a logical bridge regarding the Plaintiff's urinary frequency. The Commissioner

responds that the ALJ's determination that the Plaintiff's urinary frequency was non-severe was correct and that, even it if was incorrect, the ALJ still adequately considered its effect on the Plaintiff's RFC along with all of the Plaintiff's other medically determinable impairments.

When an ALJ determines that one or more of a claimant's impairments are "severe," "the ALJ need[s] to consider the *aggregate* effect of this entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (emphasis in original). "The fact that [an impairment] standing alone is not disabling is not grounds for the ALJ to ignore [it] entirely—it is [its] impact in combination with [the claimant's] other impairments that may be critical to his claim." *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014). That is, "a competent evaluation of [a claimant's] application depends on the total effect of all his medical problems." *Golembiewski*, 322 F.3d at 918*; see also Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) ("As we—and other circuits—have emphasized repeatedly . . . the *combined* effects of the applicant's impairments must be considered, including impairments that considered one by one are not disabling." (emphasis in original)).

"A failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted); *see also Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) (finding that "failure to consider the cumulative effect of impairments not totally disabling in themselves was an elementary error"); *Terry*, 580 F.3d at 477 (noting that even where impairments would "not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether"); *Verlee v. Astrue*, No. 1:12-CV-45, 2013 WL 1760810, at *5 (N.D. Ind. Apr. 24, 2013) (remanding where "ALJ failed to discuss, and effectively ignored, the Plaintiff's" non-severe impairments when determining the Plaintiff's

7

RFC). "Although the non-severe impairments may not have an effect on the claimant's RFC ultimately, the ALJ [is] required to explain why." *Denton*, 596 F.3d at 423.

At step two of the ALJ's analysis, the ALJ found that the Plaintiff's urinary frequency would not cause "more than a minimal limitation in functioning," and was therefore non-severe. (R. 19.) The only further reference the ALJ made to the Plaintiff's urinary frequency in determining the Plaintiff's RFC was that there was "little mention" of the issue in the Plaintiff's treatment notes. However, the fact remains that the ALJ did find that urinary frequency was a non-severe impairment in step two, and there is no indication that the ALJ took the this non-severe impairment into account when determining the Plaintiff's RFC. This omission requires reversal.

The Court is also not convinced that the ALJ properly built an accurate and logical bridge regarding the Plaintiff's urinary frequency. The Seventh Circuit has repeatedly emphasized that ALJs must "sufficiently articulate their assessment of the evidence to assure us that they considered the important evidence." *Scott v. Barnhart*, 297 F.3d 589, 585 (7th Cir. 2002). And "[a]n ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ properly considered the evidence." *Boyer v. Commissioner of Soc. Sec.*, No. 4:13-CV-45, 2014 WL 4639512, at *5 (N.D. Ind. Sept. 16, 2014) (internal citations omitted). The ALJ states that the Plaintiff's urinary frequency is a primary symptom of uncontrolled diabetes mellitus, which was being treated. But the ALJ does not adequately articulate why he concluded that the urinary frequency was attributable only to the Plaintiff's diabetes mellitus or how treating the Plaintiff's diabetes mellitus would prevent limitations based on the Plaintiff's urinary frequency.

Thus, the Court must remand this case for further consideration. On remand, the ALJ should ensure that any limitations found to exist are adequately incorporated into the Plaintiff's RFC. Because the Court is remanding on this issue, it need not rule on the remainder of the parties' arguments; however, the ALJ should also consider whether the Plaintiff's complaints of eczema, when considered in the aggregate with the Plaintiff's other impairments, further limits the Plaintiff's RFC.

## CONCLUSION

Accordingly, the Court REVERSES and REMANDS this case for further proceedings in accordance with this Opinion and Order.

SO ORDERED on January 16, 2018.

 s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT